UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCY MASSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FASHION NOVA, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lucy Massa ("Plaintiff"), by her undersigned attorneys, brings this class action complaint against Fashion Nova, LLC ("Defendant" or "Fashion Nova"). Plaintiff's allegations are based upon personal knowledge as to her own acts and upon information and belief as to all other matters.

## NATURE OF ACTION

1. This is an action regarding Defendant's intentional suppression of hundreds of thousands of 1-star, 2-star, and 3-star consumer reviews (alternatively, the "Lower-Starred Reviews") from its online website to artificially inflate the value of its products.

2. When shopping online, consumers heavily rely on reviews from fellow shoppers. In fact, ninety-three percent (93%) of adults in the United States read reviews before making online purchases.[1]

---

[1] https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews.

1

3. Fashion Nova, an almost exclusively online retailer,[2] has made millions of dollars selling clothing, apparel, accessories, and more (collectively, the "Products") on its website, fashionnova.com.

4. Taking advantage of the fact that prospective consumers rely on fellow consumers' reviews prior to making an online purchase, Defendant intentionally suppressed Lower-Starred Reviews for all Products on its website.

5. Specifically, the Federal Trade Commission found that "[f]rom as early as late 2015 through mid-November 2019, Fashion Nova chose to have four- and five-star reviews automatically post to the website but did not approve or publish *hundreds of thousands lower-starred, more negative reviews.*"[3]

6. Had Defendant not engaged in these deceptive and unfair practices, the average ratings, and inherent value to prospective consumers, of Defendant's Products would have been lower. Moreover, the written reviews would have provided more information to prospective consumers, including concerns over the quality of the Products, prior to deciding whether to purchase said Products. As a result, had Defendant not suppressed the Lower-Starred Reviews, Plaintiff and other consumers would not have purchased a number of Products, or would have paid substantially less for the Products, because the Products would have been rated poorly and deterred Plaintiff and other consumers from making purchases.

7. Plaintiff asserts claims on behalf of herself and similarly situated purchasers of Defendant's Products for violations of the consumer protections laws of Pennsylvania.

---

[2] Fashion Nova has approximately five brick-and-mortar stores, however, generates a significant amount of its sales from its online website. https://www.fashionnova.com/pages/locations

[3] https://www.ftc.gov/news-events/news/press-releases/2022/01/fashion-nova-will-pay-42-million-part-settlement-ftc-allegations-it-blocked-negative-reviews (emphasis added).

## THE PARTIES

8. Plaintiff Lucy Massa is a resident of Philadelphia, Pennsylvania and has an intent to remain there, and is therefore a domiciliary of Pennsylvania. While in Pennsylvania, Ms. Massa purchased a dress from Defendant's website in October 2018. Ms. Massa reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Product. Had Defendant not suppressed the Lower-Starred Reviews of the Product, Ms. Massa would not have purchased the Products or would have paid substantially less for them.

9. Plaintiff is a reasonable consumer and is not required to scrutinize consumer reviews to ferret out misleading facts and omissions (nor could she) and cannot ascertain facts that are in Defendant's exclusive control. Defendant had exclusive control over consumer reviews published on its website, and its practice to deliberately suppress Lower-Starred Reviews from its websites.

10. Defendant Fashion Nova, LLC is a limited liability company formed under the laws of California with its headquarters at 2801 E. 46th Street, Vernon, California 90058. Defendant owns and manages a primarily online retail business that generates approximately $500 million in revenue per year.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A). There are more than 100 Class Members, the aggregate claims of all members of the proposed Class exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different than Defendant.

12. Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its

principal place of business [California] and the State under whose laws it is organized [California]." *See* 28 U.S.C. § 1332(d)(10).

13. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this District such that it has sufficient minimum contacts with this District, and Plaintiff purchased the Products and was exposed to Defendant's misrepresentations and omissions in this District.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

15. When shopping online, consumers heavily rely on reviews made by fellow shoppers. In fact, ninety-three percent (93%) of adults in the United States read reviews before making online purchases.[4]

16. This statistic makes sense. When consumers purchase products online, they are not able to see the product for themselves and are unlikely to trust what a company will say regarding the quality of its own product.

17. As a result, consumers want to see what fellow consumers, who have already made the purchase, have to say. However, not only do consumers want to hear what others who have already made the purchase have to say, consumers also trust and are influenced by others in their position, as roughly "90% of consumers say that positive online reviews influence their buying decisions."[5]

---

[4] https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews

[5] https://medium.com/@BBBNWP/the-power-of-reviews-and-how-consumers-rely-on-them-to-make-purchases-51fcbcebd376

4

18. One popular form of consumer reviews is leaving a star-rating of the product, ranging from one-star to five-star, with an attached comment explaining why the consumer left such a rating. Five stars means that, on average, past purchasers thought that the product was very good. One star means that, on average, past purchasers though that the product was very bad.





19. Consumers rely on these reviews, and the aggregate average star rating of the product just as much as any other type of consumer review. In fact, consumers generally will not even consider a product unless it has a minimum average star-rating of 3.4 stars.[6]



20. In other words, products with too many lower-star reviews are products that future consumers will not want to purchase or will not pay as much for.

21. Defendant, taking advantage of all this information, enacted unfair and deceptive provisions on its online website regarding consumer reviews of its Products.

---

[6] https://www.podium.com/state-of-online-reviews/

22.     Specifically, Defendant, through a third-party interface, suppressed any and all Lower-Starred Reviews on all Products on its online website from 2015 to 2019.

23.     By intentionally suppressing the Lower-Starred Reviews, Defendant achieved two important goals. *First*, Defendant was able to artificially inflate the average star rating for each Product on its website, thus making each Product look more attractive to all prospective consumers.

24.     With only four-star and five-star reviews remaining on each Product, the lowest average star-rating for any Product on Defendant's website could not be lower than a 4.0 average star-rating, well above the 3.4 average minimum consumers look for when considering a purchase.

25.     Thus, Defendant's conduct directly led to a false average star rating for all Products on its website.



26.     Importantly, this also meant that Defendant inflated the value of each Product, and therefore the price of each Product, in which reviews were suppressed.

27.     *Second*, Defendant's conduct omitted any consumer warnings and/or concerns with the Products, information that other consumers should have been given access to prior and would have utilized to determine whether to purchase Products on Defendant's website.

28. The following are lower-starred consumer reviews on Defendant's website in the past two years—since Defendant ceased suppressing Lower-Starred Reviews on its website—addressing the size, fit, and quality, or lack thereof, of Defendant's Products:



29. These are just some examples of the types of information that from 2015 to 2019 were not available for consumers to review prior to purchasing a Product on Defendant's website.

30. In sum, from 2015 to 2019, consumers relied on Defendant's representations that the Products were highly rated by fellow consumers and did not have any issues.

31.     Consumers during that time period had no way of knowing that Defendant was suppressing Lower-Starred Reviews, and were instead left to think that the Products were simply highly rated and of high-quality.

32.     In January 2022, the Federal Trade Commission ("FTC") found that Defendant had been suppressing lower-starred consumer reviews throughout its website from 2015 to 2019.[7]

33.     Specifically, the FTC found that Defendant "installed a third-party online product review management interface. The interface allow[ed] users to choose to have certain reviews automatically post based upon their star ratings and hold lower-starred reviews for client approval prior to posting."[8]

34.     Importantly, "[f]rom as early as late 2015 through mid-November 2019, Fashion Nova chose to have four- and five-star reviews automatically post to the website but did not approve or publish *hundreds of thousands lower-starred, more negative reviews.*"[9]

35.     Defendant's representations of the Products during the above time period were materially misleading in that they were likely to deceive a reasonable consumer of other purchasers' true feelings and experiences with the Products, which were more negative than was otherwise advertised.

36.     As a direct and proximate result of Defendant's misrepresentations, material omissions, and deceptive practices in its website, Plaintiff and others similarly situated consumers have suffered actual injuries from their purchase of one or more of the Products because Plaintiff

---

[7] https://www.ftc.gov/system/files/documents/cases/192_3138_fashion_nova_complaint.pdf.

[8] *Id.*

[9] *Id.* (emphasis added).

and other consumers would not have purchased the Products, or would have paid significantly less for them, had Defendant not suppressed the Lower-Starred Reviews.

## CLASS ACTION ALLEGATIONS

37. Plaintiff seeks to represent a class defined as all Pennsylvania domiciliaries who purchased an item from Fashion Nova's website in Pennsylvania from March 23, 2016 through and including December 25, 2018 (the "Class").

38. Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

39. Plaintiff reserves the right to modify or expand the definition of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

40. Members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class Members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendant's records. Class Members may be notified of the pendency of this action by mail, email, and/or publication.

41. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to:

    (a)    whether the online reviews for Fashion Nova items on its website included false and/or misleading statements and/or omissions;

      (b)      whether Defendant's conduct violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law; and

      (c)      the nature of Plaintiff and the Class's damages.

42.     Plaintiff's claims are typical of the claims of the proposed Class she seeks to represent because Plaintiff, like all members of the Class, is a Pennsylvania domiciliary who purchased the Products from Defendant's website in Pennsylvania during the relevant class periods without knowing that Lower-Starred Reviews were being suppressed by Defendant. The representative Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in the very same way as the members of the Class. Further, the factual bases of Defendant's misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

43.     Plaintiff is an adequate representative of the Class she seeks to represent because their interests do not conflict with the interests of the members of the Class she seek to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

44.     A class action is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device

presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of a defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation of the Pennsylvania Unfair Trade**
**Practices and Consumer Protection Law,**
**73 Pa. Cons. Stat. §§ 201-1,** *et seq.*

45. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

46. Plaintiff brings this claim against Defendant, individually and on behalf of the Class.

47. This claim is brought under the laws of Pennsylvania.

48. Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-1, *et seq.*, defines "unfair methods of competition" and "unfair or deceptive acts or practices" to mean any one or more of the following acts and declares such acts to be unlawful under § 201-2(3):

(a) Advertising goods or services with intent not to sell them as advertised (§ 201-2(4)(ix));

(b) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions (§ 201-2(4)(xi));

(c) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)).

11

49. Defendant's advertising, marketing, and sale of its Products to Plaintiff Massa and the proposed Pennsylvania Class constituted "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

50. Defendant violated the UTPCPL by engaging in the above conduct proscribed under 73 Pa. Cons. Stat. § 201-2(3) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of its Products. Specifically, Defendant used a third-party interface to deliberately suppress Lower-Starred Reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase Products consumers would not have purchased or pay more for Products than consumers otherwise would have.

51. Plaintiff and members of the Class suffered injury in fact and lost money as a result of Defendant's conduct because they purchased Defendant's Products in reliance on Defendant's artificially-inflated reviews and incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had Defendant not suppressed the Lower-Starred Reviews.

52. On behalf of herself and the Class, Plaintiff requests that this Court order Defendant to restore the money to Plaintiff and all proposed Class members that was acquired as a result of Defendant's unfair and deceptive practices. 73 Pa. Cons. Stat. § 201-4.1.

53. On behalf of herself and the Pennsylvania, Plaintiff seeks actual damages or $100, whichever is greater, treble damages based on Defendant's egregious and systematic misconduct, and an award of costs and reasonable attorneys' fees. 73 Pa. Cons. Stat. § 201-9.2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order requiring Defendant to undertake a corrective advertising campaign;

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(i) Granting such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: April 26, 2022                    Respectfully submitted,

**FEINSTEIN DOYLE PAYNE
  & KRAVEC, LLC**

By: /s/ *Joseph N. Kravec, Jr.*
Joseph N. Kravec, Jr.
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
Email: jkravec@fdpklaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:   ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller (*Pro Hac Vice* forthcoming)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: rmiller@bursor.com